**IN THE UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| IN RE: | Chapter 11 |
| INTERNATIONAL SUPPLY CO. | Case No. 15-81467 |
| Debtor. | Honorable Thomas L. Perkins |

### INTERIM ORDER AUTHORIZING DEBTORS IN POSSESSION TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, PROVIDING ADEQUATE PROTECTION AND GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS

Upon the motion (the "Motion") of International Supply Co. ("Debtor") for the entry of an interim order (this "Interim Order") pursuant to sections 105, 361 and 364 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 4001 authorizing the Debtor to (i) obtain post-petition financing pursuant to section 364 of the Bankruptcy Code from Heartland Bank and Trust Company ("Heartland Bank" or "Post-Petition Lender"), subject to the terms and conditions set forth herein, (ii) grant security interests, mortgages and other liens and superpriority claims to the Post-Petition Lender (including a priority lien pursuant to section 364(c)(1) of the Bankruptcy Code, and claims, liens and security

interests pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code), and (iii) grant

security interests, and other liens and claims in order to provide adequate protection to and for

the benefit of Heartland Bank, Heritage Bank ("Heritage Bank"), Morton Community Bank

("MCB"), Hickory Point Bank & Trust, FSB ("Hickory Point Bank"), and FSM Fund I, LP

("FSM"),[1] all as more fully set forth herein, and upon the proceedings held before this Court and

good and sufficient cause appearing therefore,

THE COURT HEREBY FINDS:

1.      On September 24, 2015, (the "Petition Date"), Debtor filed a petition for relief

under Chapter 11 of the Bankruptcy Code, thereby commencing the above-entitled Chapter 11

case (the "Bankruptcy Case"). The Debtor is now operating its business and managing its

properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code. No official committee has yet been appointed in the Bankruptcy Case.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Case and the

Motion in this district is proper pursuant to 28 U.S.C. § 1408.

3.      An immediate and critical need exists for the Debtor to obtain funds in order to

finance the continued operation of its business. Without such funds, the Debtor will not be able

to pay its payroll and other direct operating expenses and obtain goods and services needed to

carry on its business during this period in a manner that will avoid irreparable harm to the

Debtor's estate, the Prepetition Collateral (defined below), creditors, customers and employees.

At this time, the Debtor's ability to finance its operations and the availability of sufficient

working capital and liquidity through the incurrence of new indebtedness for borrowed money

---

[1] Heartland Bank, Heritage Bank, MCB, Hickory Point Bank shall be referred to collectively
herein as the "Prepetition Lenders."

and other financial accommodations are vital to the confidence of the Debtor's vendors and suppliers of other goods and services, to its customers and to the preservation and maintenance of the going concern value of the Debtor's estate. The Debtor is unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, unsecured debt having the priority afforded by section 364(c)(1) or debt secured as described in section 364(c)(2) or (3) except as set forth herein.

4.      The Prepetition Lenders have indicated a willingness to consent and agree to the Debtor's entering into the financing arrangements contemplated by this Interim Order, and the Post-Petition Lender is willing to provide the financing contemplated herein, all subject to the conditions set forth herein, various financing arrangements evidenced by any post-petition financing documents, and the provisions of this Interim Order assuring that the Post-Petition Liens (defined below) and the various claims, superpriority claims and other protections granted pursuant to this Interim Order will not be affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated by this Interim Order. The Post-Petition Lender and the Prepetition Lenders have acted in good faith in consenting to and in agreeing to provide the post-petition financing contemplated by this Interim Order. The reliance of the Post-Petition Lender and the Prepetition Lenders on the assurances referred to above is in good faith.

5.      Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtor is required to provide adequate protection to the Prepetition Lenders against any diminution in value of the Prepetition Collateral from and after the Petition Date. The treatment requested by

the Debtor for the Prepetition Lenders and provided by this Interim Order will minimize disputes

and litigation over collateral values, priming, use of cash collateral, and the need to segregate the

Prepetition Collateral and the proceeds thereof from the Post-Petition Collateral (defined below)

and the proceeds thereof.

6.      Notice of the interim hearing on the Motion and this Interim Order has been

provided (by hand, telecopy, overnight mail or courier) to counsel for the Prepetition Lenders, all

parties of which the Debtor is aware that assert liens or other interests in and to assets of the

Debtor, the United States Trustee, and the 20 largest unsecured creditors of the Debtor for which

the Debtor has contact information. In view of the urgency of the relief requested, such notice

constitutes sufficient notice under Bankruptcy Rule 4001 and no other notice need be given.

7.      Good cause has been shown for the entry of this Interim Order. Among other

things, entry of this Interim Order will minimize disruption of the Debtor's business and

operations and permit it to meet payroll and other operating expenses, obtain needed supplies,

retain customer and supplier confidence by demonstrating an ability to maintain normal

operations, and protect the value of the assets of the estate. The financing arrangement

authorized hereunder is vital to avoid immediate and irreparable harm to the Debtor's estate.

Consummation of such financing therefore is in the best interests of the Debtor's estate.

8.      The financing and adequate protection arrangements authorized hereunder have

been negotiated in good faith and at arm's length among the Debtor, the Post-Petition Lender,

and the Prepetition Lenders. The terms of such financing and adequate protection arrangements

are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business

judgment consistent with its fiduciary duties and are supported by reasonably equivalent value

and fair consideration. As such, the Debtor, the Prepetition Lenders and the Post-Petition Lender

are entitled to the protections provided by section 364(e) of the Bankruptcy Code.

THE DEBTOR AND THE PREPETITION LENDERS HEREBY AGREE AND

STIPULATE that:

A.     Pursuant to that various loan documents (the "Heartland Prepetition Loan

Documents"), entered into from time to time by and between the Debtor and Heartland Bank,

Heartland Bank has made certain loans and financial accommodations to the Debtor to, inter alia,

fund the Debtor's operations. The Debtor believes that, as of September 24, 2012, the aggregate

amount of approximately $8,019,745.54 was due and owing in respect of loans made by the

Heartland Bank to the Debtor pursuant to the Heartland Prepetition Loan Documents, inclusive

of accrued and unpaid interest, plus fees and expenses incurred in connection therewith as

provided in the Heartland Prepetition Loan Documents (all of the foregoing, the "Heartland

Prepetition Indebtedness"). For purposes of this Interim Order, each of the terms "Post-Petition

Loans" (as hereinafter defined) and "Heartland Prepetition Indebtedness" shall include the

principal of, and all interest, fees, expenses and other charges owing in respect of, such loans,

indebtedness, or financial accommodations, including any reasonable attorneys', accountants',

and financial advisors' fees that are chargeable or reimbursable under the relevant Documents

and applicable law relating to such loans or other indebtedness).

B.     The Prepetition Lenders acknowledge that the Post-Petition Lender is Heartland

Bank, a member of the Prepetition Lenders.

C.     To secure the Heartland Prepetition Indebtedness, the Debtor granted to and for

the benefit of the Heartland Bank, pursuant to the Heartland Prepetition Loan Documents,

security interests in all accounts, chattel paper, instruments, documents, general intangibles,

inventory, goods, equipment, investment property, deposit accounts, bank accounts, deposits and cash, including all increases, accretions, replacements, substitutions, and additions thereto, and all cash and non-cash proceeds and products (all of the foregoing collateral generally described above, and all proceeds thereof, shall be referred to herein collectively as the "Prepetition Collateral," and such liens shall be referred to herein as the "Heartland Prepetition Liens").

D.      All cash of the Debtor wherever located on the Petition Date represented either proceeds of loans from the Prepetition Lenders to the Debtor or proceeds of Prepetition Collateral. Pursuant to the Heartland Prepetition Loan Documents, the Debtor believes that the Heartland Bank has a first priority, valid and perfected security interest in and lien on all cash of the Debtor and these funds constitute "cash collateral" within the meaning of section 363(a) of the Code.

E.      The Debtor believes that the Heartland Prepetition Liens constitute valid, binding, enforceable, and perfected first priority lien, respectively, and are not subject to avoidance or subordination in accordance with the provisions of this Interim Order) pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtor believes that the Heartland Prepetition Indebtedness constitutes a legal, valid and binding obligation of the Debtor, enforceable in accordance with the terms of the Heartland Prepetition Loan Documents (other than in respect of the stay of enforcement arising from Bankruptcy Code section 362); no offsets, defenses, or counterclaims to the Heartland Prepetition Indebtedness exist; and no portion of the Heartland Prepetition Indebtedness is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

F.      The Prepetition Lenders assert, and the Debtor believes, that substantially all of the Debtor's assets are subject to the Heartland Prepetition Liens [with the exception of Debtor's titled vehicles.] The Prepetition Lenders have objected to any further use of the Prepetition Collateral by the Debtor, except under the terms of this Interim Order.

THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.      The Debtor is hereby authorized to borrow money pursuant to the terms of this Interim Order, the provisions of the Heartland Prepetition Loan Documents and any post-petition loan documents ("Post-Petition Loan Documents") that the Post-Petition Lender reasonably requires (except as otherwise set forth herein) and perform its obligations hereunder and thereunder, solely in accordance with, and subject to, the terms of this Interim Order, in compliance with and for the purposes of "necessary operating expenses," as set forth in the budget attached as Exhibit __ to the _____, as the same may be amended, subject to the prior written approval of the Post-Petition Lender, prior to a final hearing on the Motion  (the "Budget"). The post-petition advances made by Heartland Bank prior to the entry of this Interim Order and identified (i) in the Motion to Use Cash Collateral [Docket No. 3] and (ii) in the Motion, are hereby approved, *nunc pro tunc*, are deemed Post-Petition Loans and are subject to all of the terms set forth in this Interim Order. The term "necessary operating expenses" does not include payments to pay or cure any pre-petition obligations of the Debtor without the written consent of the Post-Petition Lender. The determination of compliance with "necessary operating expenses" shall be made as demanded by the Post-Petition Lender until the occurrence of a Termination Event (defined below). Notwithstanding the provisions of the Heartland Prepetition Loan Documents relating to accrual and payment of interest, the Post-Petition Loans shall accrue interest on the outstanding principal amount thereof at the rate of [8%] per annum.

Notwithstanding any other provision of this Interim Order or of the Heartland Prepetition Loan Documents, the Debtor shall not borrow more than $500,000.00 in Post-Petition Loans in the aggregate, prior to entry of a final order (the "Final Order") approving the Post-Petition Loans. Notwithstanding any other provision of this Interim Order, the Post-Petition Lender shall not have any obligation or commitment to make Post-Petition Loans pursuant to this Interim Order until the conditions precedent provided for herein have been satisfied.

2.      From and after the date hereof (the "Effective Date") until: a) the indefeasible payment in full in cash of the Post-Petition Loans; and b) the termination of any commitments or obligations under this Interim Order, the Debtor is hereby authorized and directed to remit, and shall remit to the Post-Petition Lender periodic payments required by the Post-Petition Loan Documents arising from, or constituting proceeds of, the Prepetition Collateral or the Post-Petition Collateral, unless the Court enters any order providing otherwise. Payments remitted (or deemed remitted) to the Post-Petition Lender shall be applied as and to the extent specified in Paragraph 3 hereof. For purposes of this Interim Order, "proceeds" of any collateral shall mean proceeds (as defined in the Uniform Commercial Code) of such collateral as well as: (1) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to such collateral; (2) any and all payments (in any form whatsoever) made or due and payable to the Debtor in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of such collateral by any governmental body, authority, bureau or agency (or any person under color of governmental authority); and (3) other payments, dividends, interest or other distributions on or in respect of any of such collateral.

3.      Proceeds or payments of Prepetition Collateral, Cash Collateral and Post-Petition Collateral shall be remitted or deemed remitted to the Post-Petition Lender in accordance with

Paragraph 2 hereof and shall be applied by the Post-Petition Lender as follows:

      a)      first, to accrued, unpaid interest on the Post-Petition Loans; and

      b)      next, to any other outstanding amounts of Post-Petition Loans, including

costs, expenses and principal.

4.      Any and all payments or proceeds remitted, or deemed to be remitted, to the Post-

Petition Lender pursuant to the provisions of Paragraph 2 of this Interim Order (or any similar

provisions of the Heartland Prepetition Loan Documents) shall be received, or deemed received,

by the Post-Petition Lender free and clear of any claim, charge, assessment or other liability

including, without limitation, any such claim or charge arising out of or based on sections 506(c)

or 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived

by the Debtor. In consideration of the retainers paid thereto prior to the Petition Date and those

further retainers authorized pursuant to this order (collectively, the "Retainers"), the Post-

Petition Lender's agreement to make funds available pursuant to the "necessary operating

expenses" to satisfy certain of the Debtor's professional fees and expenses incurred in

connection with this proceeding [as of the Termination Date (hereinafter defined)], [Sumner

Bourne, as counsel for the Debtor,] by execution of this Interim Order, [each] hereby waive[s]

and release[s] its rights to request that the Debtor or any subsequently appointed trustee assert on

its behalf a claim under section 506(c) of the Bankruptcy Code against the Prepetition Collateral

or the Post-Petition Collateral.

5.      As security for all loans, advances and any other indebtedness or obligations,

contingent or absolute, incurred from and after the Petition Date and which may now or from

time to time hereafter be owing by the Debtor to the Post-Petition Lender (all such loans,

advances, indebtedness or obligations are the "Post-Petition Loans"), the Post-Petition Lender is

hereby granted valid, binding, enforceable and perfected liens (the "Post-Petition Liens") in all currently-owned or hereafter-acquired property and assets of the Debtor of any kind or nature, whether real or personal, tangible or intangible (specifically excluding avoidance actions), wherever located, now owned or hereafter acquired or arising, and all proceeds, products, rents and profits thereof, including, accounts, chattel paper, instruments, documents, general intangibles, inventory, goods, equipment, investment property, deposit accounts, bank accounts, deposits and cash, including all increases, accretions, replacements, substitutions, and additions thereto, and all cash and non-cash proceeds and products (all of the foregoing collateral generally described above, and all proceeds thereof (all of the foregoing, the "Post-Petition Collateral"), in each case subject only to: any superior valid, perfected, enforceable and unavoidable lien arising under applicable non-bankruptcy law on account of goods or services provided.

6.      As adequate protection, and to the same extent, priority, and enforceability as the liens securing the indebtedness owed to each of the Pre-Petition Lenders, respectively, each of the Prepetition Lenders is hereby granted a valid, binding, enforceable and perfected lien (the "Adequate Protection Liens") in all Post-Petition Collateral equal to the sum of the aggregate amount of diminution in value of their respective interests in the Prepetition Collateral, whether by depreciation, use, sale, loss decline in market price, or otherwise. The Adequate Protection Liens are subject only to the Post-Petition Liens.

7.      In addition, the Post-Petition Loans shall have priority in accordance with the provisions of section 364(c)(1) of the Bankruptcy Code over all administrative expenses of the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c) or 726 of the Bankruptcy Code ("Superpriority").

8.       The Post-Petition Loans shall become due and payable, without notice or demand, on the Termination Date, as provided herein, unless the Post-Petition Lender issues a Non-Termination Notice (as hereinafter defined). From and after the Termination Date, the Debtor shall have no authority to use Prepetition Collateral (including Cash Collateral) of the Prepetition Lenders or Post-Petition Collateral of the Post-Petition Lender. From and after the Effective Date, the proceeds of the Post-Petition Loans, the Prepetition Collateral, and the Post-Petition Collateral shall not, directly or indirectly, be used to pay expenses of the Debtor or otherwise disbursed except for: (a) those expenses, payments, and/or disbursements that are set forth in the Budget, as the same may be amended or supplemented from time to time (subject to the express prior written approvals of each of the Prepetition Lenders and the Post-Petition Lender), or otherwise permitted under this Interim Order; (b) compensation and reimbursement of expenses allowed by this Court to attorneys, accountants, or other professional persons retained by the Debtor as provided for in this Interim Order; and (c) amounts due to the Prepetition Lenders and the Post-Petition Lender, and their accountants, attorneys or other professionals hereunder or under the Heartland Prepetition Loan Documents, which amounts shall be reasonable, but shall not otherwise be subject to the approval of this Court (except that any dispute as to the reasonableness of such fees and expenses will be resolved in the Bankruptcy Court); provided that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clauses (a) or (b) and shall not affect the right of the Prepetition Lenders or the Post-Petition Lender to object to the allowance and payment of such amounts. Except as set forth in the first sentence of this Paragraph 8, neither the Prepetition Lenders, nor the Post-Petition Lender have consented or agreed to the use of the proceeds of the Post-Petition Loans, Prepetition Collateral or the Post-Petition Collateral.

9.      In consideration of and as conditions precedent for the agreement of the Post-Petition Lender to make and continue to make the Post-Petition Loans hereunder, the Debtor hereby covenants and agrees to collect and pay to the Post-Petition Lender through sales in the ordinary course of business of Prepetition Collateral and/or Post-Petition Collateral an amount of not less than the total amount of interest due prior to the Maturity Date.

10.     The automatic stay under Bankruptcy Code section 362(a) shall be, and it hereby is, modified to the extent necessary to permit the Post-Petition Lender to retrieve, collect and apply payments and proceeds in respect of the Prepetition Collateral and the Post-Petition Collateral in accordance with the terms and provisions of this Interim Order.

11.     Notwithstanding anything herein, unless the Post-Petition Lender issues a notice to the contrary (a "Non-Termination Notice"), the Debtor shall no longer, pursuant to this Interim Order or otherwise, be authorized to borrow funds hereunder or to use Cash Collateral or any proceeds of the Post-Petition Loans already received (and any obligation of the Post-Petition Lender to make loans or advances hereunder shall be terminated), upon the earliest to occur of any of the following events (any such event shall be referred to as a "Termination Event" and the date of any such event for which there is not a Non-Termination Notice shall be referred to as the "Termination Date"):

    (a)     Any "Event of Default" as defined in the Heartland Prepetition Loan Documents, after taking into account applicable cure periods;

    (b)     Any "Event of Default" as defined in the Post-Petition Loan Documents, after taking into account applicable cure periods;

    (c)     The Debtor's failure to comply with the terms and conditions of this Interim Order (including, without limitation, the Debtor's use of funds in excess of the Budget);

    (d)     The Maturity Date (as defined below);

 (e) Any warranty or representation made to Heartland Bank herein, or any financial statements heretofore, now or hereafter delivered to Heartland Bank by the Debtor which shall prove materially false or misleading;

 (f) An Order entered dismissing this case, converting the case to a case under Chapter 7 of the Code, appointing a trustee, whether under Chapter 11 or Chapter 7, appointing an examiner to perform any duties of a trustee other than those set forth in § 1106(a)(3) or (a)(4) of the Code, or terminating the authority of the Debtor to conduct business;

 (g) Any material adverse change in the business or the financial conditions of the Debtor;

 (h) Any change in the ownership of the Debtor, including but not limited to the sale or contract for sale of any of Debtor's assets out of the ordinary course of business, unless this Court orders such change after notice and hearing;

 (i) Any increase in officer, director or employee compensation over "pre-petition" established salaries or raises;

 (j) Any change in the ownership of the Debtor, or change in the members of the Debtor; or

 (k) The reversal of the entry of this Interim Order on appeal, or the vacation, rescission, or modification of any of the liens and protections provided herein over Prepetition Lenders' or Post-Petition Lender's objection.

12. All obligations and commitments of the Prepetition Lenders and the Post-Petition Lender hereunder shall terminate at the earliest of the following (the "Maturity Date"):

 (a) the close of business on November 30, 2015;

 (b) the entry of an order pursuant to section 363 of the Bankruptcy Code approving the sale of substantially all of the Debtor's assets;

 (c) the effective date of any plan of reorganization;

 (d) conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code;

 (e) appointment of a trustee or examiner in the Bankruptcy Case; or

 (f) dismissal of the Bankruptcy Case.

13.     Subject to the applicable provisions of Paragraph 18, after the occurrence of a Termination Event for which there is not a Non-Termination Notice, the Prepetition Lenders or the Post-Petition Lender shall have the right to exercise the rights granted them hereunder as to all or such part of the Prepetition Collateral or Post-Petition Collateral, as the Prepetition Lenders or the Post-Petition Lender, in their sole discretion, shall elect, including the right to take possession of and sell the Prepetition Collateral or Post-Petition Collateral in accordance with the terms of the Uniform Commercial Code to satisfy the indebtedness owed to each of the respective Prepetition Lenders, and the Post-Petition Loans, provided, however, that the Post-Petition Lender first obtains relief from the automatic stay of Section 362 of the Bankruptcy Code.

14.     Notwithstanding the occurrence of the Termination Date or anything herein to the contrary, all of the rights, remedies, benefits and protections provided to the Prepetition Lenders and Post-Petition Lender under this Interim Order shall survive the Termination Date. Upon the Termination Date, the principal of and accrued interest and fees and all other amounts owed to the Prepetition Lenders and the Post-Petition Lender hereunder or under the Heartland Prepetition Loan Documents shall be immediately due and payable and the Prepetition Lenders and the Post-Petition Lender shall have all other rights and remedies provided in their respective loan documents and this Interim Order, subject to obtaining relief from the automatic stay.

15.     The stipulations contained in Paragraphs [A, C, D and E] above, and the repayment of the Post-Petition Indebtedness contemplated by Paragraphs 2 and 3 above, shall be binding upon the Debtors

16.     If it shall be necessary for the Prepetition Lenders or the Post-Petition Lender, at any time, to exercise any of their respective rights and remedies hereunder or under applicable

14

law in order to effect repayment of the Post-Petition Loans or the Adequate Protection

Obligations, or to receive any amounts or remittances due hereunder, including without

limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or the Post-

Petition Collateral, the Prepetition Lenders and the Post-Petition Lender shall, subject to having

obtained an order modifying the automatic stay under Section 362 of the Bankruptcy Code, each

have the right without any further action or approval of this Court to exercise such rights and

remedies as to all or such part of the Prepetition Collateral and the Post-Petition Collateral as the

Prepetition Lenders or the Post-Petition Lender shall, in their sole discretion, elect. The

Prepetition Lenders and the Post-Petition Lender shall be entitled to apply the payments or

proceeds of the Prepetition Collateral and the Post-Petition Collateral in accordance with the

provisions of this Interim Order.

17.    The Debtor shall keep the Prepetition Collateral and the Post-Petition Collateral

(collectively, the "Collateral") insured against loss or damage resulting from fire, flood or other

hazards, casualties and contingencies with replacement cost endorsement (without depreciation)

in such amounts as they are approved by Heartland Bank. This insurance shall be carried with

companies approved by Heartland Bank and the policies and renewals thereof shall be deposited

with and held by Heartland Bank and to each shall be attached thereto a cause requiring ten days

notice to Heartland Bank prior to any cancellation and a standard noncontributing mortgagee

clause in favor of Heartland Bank and entitling Heartland Bank to collect any and all proceeds

payable under all such insurance as well as a standard waiver of subrogation endorsement during

the term of this agreement and thereafter until the entire Heartland Prepetition Indebtedness and

the Post-Petition Indebtedness are indefeasibly paid in full.

18.    The Debtor shall at all times comply with all laws, statutes, rules, regulations,

orders and directions of any governmental authority having jurisdiction over Debtor or its business, the violation of which would have a material effect upon Debtor.

19.     The Debtor shall pay all post-petition taxes, personal and real property taxes (whether incurred before or after the petition), assessments and governmental and other charges, levied or imposed, which are, or which if unpaid might become, a lien or charge upon the property, assets, earnings or business of the Debtor, as the case may be. The Debtor shall also pay when due all post-petition administrative taxes, including any and all federal and state withholding and sales taxes, and shall provide Heartland Bank with copies of depository receipts or other satisfactory evidence of same no later than one week after the close of each pay period.

20.     [Additional affirmative covenants to be requested by Heartland Bank]

21.     Except as provided herein, the Debtor shall be enjoined and prohibited from at any time during the Bankruptcy Case granting liens on and security interests in the Prepetition Collateral, the Post-Petition Collateral or any portion thereof to any other parties pursuant to section 364 of the Bankruptcy Code or otherwise, which liens and security interests, as the case may be, are senior, or on a parity with, or junior to the liens and security interests of Heartland Bank therein (excluding any liens resulting from Court-approved reclamation claims or that arise by operation of law in the ordinary course of business). Except in accordance with the terms of this Interim Order, the Debtor shall be enjoined and prohibited from at any time a) using the Post-Petition Lender's Cash Collateral, and b) using the Post-Petition Collateral.

22.     Until repayment of all indebtedness, Debtor will not, without the prior written consent of Heartland Bank:

(a)     Engage in any transaction which is not in the ordinary course of its business and any sale, lease, exchange, collection or other disposition (any of which is a

"disposition") of Collateral other than the sale of inventory in the ordinary course of business, including, without limitation, any disposition of equipment or any bulk disposition of inventory that is not an ordinary course transaction;

(b)      Engage in new or different business activities;

(c)      Increase investment, whether by purchase, lease, or otherwise, in fixed or capital assets; [or]

(d)      Create, assume, or suffer to exist any lien or security interest, in favor of any person other than Heartland Bank except:

      (i)      liens or security interests existing as of the date of the entry of this Order; or

      (ii)     liens expressly consented to in writing by Heartland Bank[.] [;or]

(e)      [Additional negative covenants to be requested by Heartland Bank]

23.      The Debtor shall execute and deliver to the Prepetition Lenders and the Post-Petition Lender all such Documents, financing statements, instruments and other documents as the Prepetition Lenders and the Post-Petition Lender may reasonably request to evidence, confirm, validate or perfect the liens and security interests granted pursuant hereto.

24.      On or before the end of each week following the Effective Date and prior to the Termination Date, the Debtor shall provide the Heartland Bank with:

(a)      Reports of accounts receivables showing which accounts are current, up to 30, 31-60, 61-90 and 91 days or more past the invoice date and listing the names and addresses of the account obligors; and,

(b)     A check register identifying the date, payee, and payment amount and providing

sufficient information to allow Heartland Bank to verify the nature and purpose of

the payment.

25.     The Debtor shall permit representatives, agents and/or employees of the

Prepetition Lenders and the Post-Petition Lender to have reasonable access to their premises and

their records during normal business hours (without unreasonable interference with the proper

operation of the Debtor's business) and shall cooperate, consult with, and provide to such

persons all such non-privileged information as they may reasonably request.

26.     The Post-Petition Liens and all other liens and security interests granted herein

shall, pursuant to this Interim Order, be, and they hereby are, deemed perfected, and no further

notice, filing or other act shall be required to effect such perfection; provided, however, if the

Prepetition Lenders or Post-Petition Lender shall, in their sole discretion, choose to file such

mortgages, financing statements, notices of liens and security interests and other similar

documents, all such mortgages, financing statements or similar documents shall be deemed to

have been filed or recorded at the time and on the date of entry of this Interim Order, and the

automatic stay of section 362 of the Bankruptcy Code is hereby vacated to effect such filings.

27.     In making decisions to advance moneys or extend financial accommodations of

any nature under this Interim Order or pursuant to the Heartland Prepetition Loan Documents, in

administering the Debtor's use of Cash Collateral or any advances, loans, or financial

accommodations of any sort under this Interim Order or pursuant to the Heartland Prepetition

Loan Documents, or in taking any other action related to or in connection with any of the

foregoing, the Post-Petition Lender shall have no liability to any third party, and shall not be

deemed to be in control of the operations of the Debtor, an "employer" of any of the Debtor's

18

employees, or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtor.

28.     Upon the occurrence of an event of default, the Debtor shall immediately cease using cash collateral, segregate and hold all cash collateral in trust for the benefit of Heartland Bank, and after one day written notice to Debtor or its attorneys, and the attorneys for the committee, if any, shall have been given by Heartland Bank without Debtor having cured the event of default within such one-day period, Heartland Bank shall be entitled to a hearing for relief of the automatic stay upon the filing of a motion and a request for emergency relief.

29.     Once the automatic stay of § 362 of the Code is modified or terminates with respect to Heartland Bank, it shall not be reimposed, reinstated or otherwise become applicable, whether under § 105 or 362 of the Code, Bankruptcy Rule 9024, by virtue of conversion of this case, material change and circumstances or otherwise.

30.     Notwithstanding anything contained herein, in the Heartland Prepetition Loan Documents or Post-Petition Loan Documents or in any other agreement securing or evidencing the indebtedness to the contrary, upon the occurrence of an event of default as defined herein, the entire indebtedness remaining unpaid at that time, at the election of Heartland Bank, and without notice of such election and without demand or presentment, shall become immediately due and payable in full.

31.     The provisions of this Interim Order shall be binding upon and inure to the benefit of the Prepetition Lenders, the Post-Petition Lender, the Debtor and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor).

32.     The Heartland Prepetition Loan Documents are incorporated herein by reference,

are extended (to the extent that same has expired) until the termination date (as defined hereinbelow), are ratified, reaffirmed and confirmed by Debtor, are deemed adopted in full by Debtor and shall be construed and considered as Documents between Debtor and Heartland Bank under this Order (except to the extent inconsistent herewith or modified hereby), including but not limited to, all financial reporting covenants contained therein, and this Order shall be sufficient and inclusive evidence of the cash collateral arrangements between Debtor and Heartland Bank and of Debtor's ratification, reaffirmation and confirmation of the Heartland Prepetition Loan Documents. The terms of the Heartland Prepetition Loan Documents shall govern the indebtedness except to the extent otherwise provided herein or modified hereby.

33.     Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of any lien, security interest or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the Prepetition Lenders or the Post-Petition Lender hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Lenders or the Post-Petition Lender, as the case may be, shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to any such claim.

34.     The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security

Documents, mortgages and financing statements) and to pay fees and expenses that may be required or necessary for the Debtor's performance hereunder, including, without limitation: a) the execution of any post-petition financing documents, and b) the payment of the fees and other expenses described herein or in such post-petition financing documents as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees and facility fees and reasonable attorneys', and accountants' fees and disbursements.

35.   No delay or failure to exercise any right, power or remedy accruing to Heartland Bank upon breach or default by Debtor under this Order or any document or agreement shall impair any such right, power or remedy of Heartland Bank, nor shall it be construed to be a waiver of any such breach or default, nor an acquiescence therein, nor of any breach or default heretofore or hereafter occurring.

36.   If any or all of the provisions of this Interim Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacation shall not affect the validity of the indebtedness to Heartland Bank incurred pursuant to this Interim Order and which is incurred before the effective date of such stay, modification or vacation, or the validity and enforceability of any lien or priority authorized and granted hereby with respect to any such indebtedness to Heartland Bank, and not withstanding such stay, modification or vacation, any authorized use of cash collateral pursuant to this order prior to the effective date of such modification, stay or vacation, to or for the benefit of Debtor shall be governed in all respects by the original provisions of this Order and Heartland Bank shall be entitled to all the rights, privileges and benefits, including the security interest, mortgages and priorities granted herein, with respect to all indebtedness.

37.   This Order integrates all terms and conditions mentioned herein or incidental

hereto, and supersedes all prior negotiations, whether written or oral, and prior writings with respect to subject matter hereof to the extent they are inconsistent with the terms of this Order.

38.     The Debtor shall, on or before October___, 2015, serve by United States mail, first class postage prepaid, copies of the Motion, this Interim Order, the proposed Final Order and a notice of the hearing (the "Final Hearing Notice") to be held on November ___, 2015, at __:00 _.m. to consider entry of the proposed Final Order on: (a) counsel to the Committee or, barring timely appointment of a Committee, the entities set forth on the list of the twenty largest unsecured creditors of the Debtor; (b) the Office of the United States Trustee; (c) counsel of each of the Prepetition Lenders; (d) counsel of Heartland Bank; (e) all parties known to the Debtor to assert liens on or security interests in any of the Debtor's assets; (f) the Internal Revenue Service; and (g) all parties who have timely filed requests for notice under Bankruptcy Rule 2002. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the United States Bankruptcy Court Clerk for the Central District of Illinois no later than [October___, 2015] [November ___, 2015], which objections shall be served so that the same are received on or before such date by:

      (1)     Counsel to the Debtor;

      (2)     Counsel to the Post-Petition Lender;

      (3)     Counsel to the Prepetition Lenders; and

      (4)     The Office of the United States Trustee – Peoria, Illinois

39.     Notwithstanding anything to the contrary herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, (a) any of the rights of any of the Prepetition Lenders or the Post-Petition Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of each of the Prepetition Lenders and the Post-Petition Lender to (1) request additional adequate

protection of their interests in the Prepetition Collateral or the Post-Petition Collateral or relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code, (2) request conversion of the Bankruptcy Case to Chapter 7, and (3) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan; and (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Lenders or the Post-Petition Lender.

30.     This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof. There is no just reason to delay enforcement or appeal of this Interim Order.

4848-6652-7785, v. 2