**IT IS SO ORDERED.**

**SIGNED THIS: October 6, 2015**

_____
**Thomas L. Perkins
United States Bankruptcy Judge**
_____

**IN THE UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| IN RE: | Chapter 11 |
| INTERNATIONAL SUPPLY CO., | Case No. 15-81467 |
| Debtor, | Honorable Thomas L. Perkins |

**INTERIM ORDER AUTHORIZING DEBTOR'S
USE OF CASH COLLATERAL AND OTHER RELIEF**

International Supply Co. ("Debtor"), having filed a motion for authority to use the cash collateral of Heartland Bank and Trust Company (the "Motion"), and for interim authority to borrow and for Heartland Bank and Trust Company ("Bank") to provide DIP financing; the Court having read and considered the Motion and oral representations made by the parties at a preliminary hearing held on September 25, 2015; and the parties having stipulated to entry of this order as evidenced by the signatures appearing below; and this Order having been noticed for entry pursuant to Bankruptcy Rule 4001(d).

**THE COURT FINDS AS FOLLOWS:**

A.  On September 24, 2015 (the "Petition Date"), Debtor filed a petition under Chapter 11 of the Bankruptcy Code ("Code"). Since the Petition Date, Debtor has remained in possession of its assets and continues to operate and manage its business as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

B.  Prior to the petition date, Bank entered into a number of financing arrangements (the "Loans") with Debtor evidenced by, among other things, multiple promissory notes (collectively, the "Notes"); security agreements (collectively, the "Security

    Agreements"); and a UCC financing statement filed with the Illinois Secretary of State (the "Financing Statement") (the Notes, Security Agreements, Financing Statement, together with all other documents and writings executed in connection with the Loans before the Petition Date, are collectively hereinafter referred to as the "Heartland Prepetition Loan Documents").

C.    All cash, checks, refunds (including tax refunds), negotiable instruments, documents of title, deposit accounts, securities and other cash equivalents which are now or may hereafter come into possession, custody or control of Debtor, that constitute and will continue to constitute cash collateral of Bank, must be segregated and accounted for, pursuant to § 363(c)(4) of the Code, and cannot be used by Debtor in operating its business or managing its affairs except pursuant to this Order, necessitating the immediate authorization of its use of cash collateral to avoid immediate and irreparable harm to the estate pending a final hearing, if necessary (the "Final Hearing").

D.    To continue the operation of its business, Debtor represents to Bank and the Court that it must use cash collateral from the Bank in order to meet its payroll and otherwise pay its continuing obligations incurred in the ordinary course of its business. Until the conclusion of the Final Hearing, however, Debtor agrees to use only that amount of cash collateral as is necessary to make the payments required hereunder and to otherwise avoid immediate and irreparable harm to the estate.

E.    Bank has also made a good faith and reasonable request for adequate protection of its interests.

F.    Bank is willing to enter into this arrangement with Debtor and to allow Debtor's limited use of cash collateral, but only on the terms and conditions set forth herein.

G.    Good cause has been shown for entry of this Interim Order, among other things, the entry of this Interim Order will minimize disruption of Debtor's business as a going concern and will increase the possibility of a successful rehabilitation, and, therefore, is in the best interests of Debtor, the estate and its creditors.

H.    This Interim Order has been negotiated in good faith and at arm's length by the parties and the Court finds that they have acted in good faith.

**ACCORDINGLY, IT IS HEREBY ORDERED AS FOLLOWS:**

    1.    The Debtor acknowledges the accuracy, validity and truth of the recitals set forth hereinabove.

    2.    Debtor is hereby authorized to continue to use Cash Collateral for the disbursements set forth in the budget attached as an exhibit to the Motion

    (the "Budget") for the period covering the Petition Date through the close of business on November 13, 2015 (the "Interim Period").

3. In order to adequately protect the security interests of the Bank pursuant to Section 363 of the Bankruptcy Code, the Bank is hereby granted a replacement, automatically perfected security interest and lien in an amount equal to the Cash Collateral used by the Debtor in all of the Debtor's personal property and all proceeds, products, rents and/or profits thereof (such collateral, collectively, the "Replacement Collateral" and replacement security interests and liens granted in the Replacement Collateral, collectively, the "Replacement Liens").

4. The liens created pursuant hereto:

    (a) shall secure all cash collateral utilized by Debtor pursuant to this Interim Order;
    (b) shall, where such lien constitutes a first lien, have priority over any and all claims and expenses in this case; and
    (c) shall be subordinate only to enforceable and perfected liens and security interests in existence at the time this case was commenced with a priority senior to the priority of the security interest in favor of the Bank.

    To the extent that all liens granted on the post-petition assets of Debtor in favor of the Bank pursuant hereto are insufficient to compensate the Bank in full for the post-petition amounts due by Debtor or any subsequent Trustee of Debtor's estate, the Bank is hereby granted a priority administrative claim, pursuant to § 507(b).

5. The Bank's Replacement Liens granted pursuant to this Interim Order shall constitute valid and perfected security interests and liens with the priority provided herein upon the Replacement Collateral, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the liens of the Bank in and to the Replacement Collateral or to entitle the Bank to the priorities granted herein.

6. The Debtor is hereby authorized to borrow funds from the Bank in the approximate amount of One Hundred Thirty-Thousand and 00/100 Dollars ($130,000.00) in order to fund payroll for the week ending September 25, 2015, and COD shipments of products. The appropriate protection to be afforded to the Bank in connection with this post-petition financing is reserved for further ruling of this Court.

3

7. All funds received by Debtor from whatever source shall immediately be deposited in Debtor's debtor-in-possession account. Any funds, received by Debtor from any source other than pre-petition or post-petition collateral of Bank (the "Bank's Collateral"), must be segregated and deposited in a separate debtor-in-possession account. Debtor shall notify Counsel for Bank immediately upon receipt of any funds that have not been derived from Bank's Collateral prior to their deposit in any account.

8. The Debtor shall permit the Bank, or its agents or employees, upon request at any time during normal business hours upon seventy-two (72) hours prior written notice:

    (a) To inspect, audit, or otherwise examine the books and records of Debtor and to make copies thereof or extracts therefrom; and

    (b) To permit the Bank access to the Debtor's premises to appraise the equipment, the real estate and to audit the inventory.

9. On or before the end of each week during the Interim Period, the Debtor shall provide the bank with:

    (a) Reports of accounts receivables showing which accounts are current, up to 30, 31-60, 61-90 and 91 days or more past the invoice date and listing the names and addresses of the account obligors; and,

    (b) A check register identifying the date, payee, and payment amount and providing sufficient information to allow Bank to verify the nature and purpose of the payment.

10. Each of the following events shall constitute an event of default hereunder:

    (a) Any material adverse change in the business or the financial conditions of the Debtor;

    (b) The sum of the cash on hand and outstanding accounts receivable of Debtor at any time totals less than Two Million and 00/100 Dollars ($2,000,000.00) as of October 31, 2015; or,

    (c) Any violation by the Debtor of any provision of this Order.

11. Upon the occurrence of an event of default, the Debtor shall immediately cease using cash collateral, segregate and hold all cash collateral in trust for the benefit of Bank, and after one day written notice to Debtor or its attorneys, and the attorneys for the committee, if any, shall have been

given by Bank without Debtor having cured the event of default within such one-day period, Bank shall be entitled to a hearing for relief of the automatic stay upon the filing of a motion and a request for emergency relief.

12. Upon entry of this Order, the replacement liens granted to Bank by virtue of this Order shall be valid and perfected as against all entities, without regard to applicable federal, state or local filing or recording statutes or any law requiring the taking or possession of the collateral, provided, that Bank may, but need not, take such steps as it deems appropriate to comply with such federal, state or local statutes and the automatic stay is hereby modified accordingly.

13. No delay or failure to exercise any right, power or remedy accruing to Bank upon breach or default by Debtor under this Order or any document or agreement shall impair any such right, power or remedy of Bank, nor shall it be construed to be a waiver of any such breach or default, nor an acquiescence therein, nor of any breach or default heretofore or hereafter occurring.

14. The provisions of this Order shall be binding upon and inure to the benefit of Bank and Debtor and their respective successors and assigns.

15. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacation shall not affect the validity of the indebtedness to Bank incurred pursuant to this Order and which is incurred before the effective date of such stay, modification or vacation, or the validity and enforceability of any lien or priority authorized and granted hereby with respect to any such indebtedness to Bank, and not withstanding such stay, modification or vacation, any authorized use of cash collateral pursuant to this order prior to the effective date of such modification, stay or vacation, to or for the benefit of Debtor shall be governed in all respects by the original provisions of this Order and Bank shall be entitled to all the rights, privileges and benefits, including the security interest, mortgages and priorities granted herein, with respect to all indebtedness.

16. This Order integrates all terms and conditions mentioned herein or incidental hereto, and supersedes all prior negotiations, whether written or oral, and prior writings with respect to subject matter hereof to the extent they are inconsistent with the terms of this Order.

17. Notwithstanding any provision to the contrary in this Order, Bank shall have the right at any time to seek a modification of this Order, to seek relief from the automatic stay, or any other relief under the Code.

18. Within 24 hours of the entry of this Order, or if this Order shall be entered on Friday or a day immediately preceding a legal holiday, then by the conclusion of the next business day, Debtor shall serve, or cause to be served, a copy of the Motion with its attachments (unless it has already been served) and this Order on

    (a)  All creditors holding secured claims or records;

    (b)  All other entities known, or discoverable after reasonable investigation by Debtor, to claim any interest in cash collateral;

    (c)  Any committee of creditors appointed pursuant to § 1102 of the Code, or if no committee, the creditors included on the list filed pursuant to Bankruptcy Rule 1007(d);

    (d)  The United States Trustee;

    (e)  Any objection to the continued effectiveness of this Order shall be in writing and shall be filed with the court and served on Debtor, in care of its counsel, Sumner A. Bourne, Rafool, Bourne & Shelby, P.C., 411 Hamilton Boulevard, Suite 1600, Peoria, Illinois 61602, and Bank, in care of its counsel, Mark A. Bogdanowicz, Howard & Howard Attorneys PLLC, One Technology Plaza, 211 Fulton Street, Suite 600, Peoria, Illinois 61602.

    (f)  A Final Hearing will be held on November 3, 2015, at 9:00 a.m. in Bankruptcy Courtroom 121 of the United States Courthouse, 600 NE Monroe Street Peoria, Illinois 62701.

19. Absent an earlier event of default, the Debtor is authorized to use Bank's cash collateral, subject to the terms and conditions set forth herein, until the close of business on November 13, 2015 (the "Termination Date"). From and after the Termination Date, the Debtor shall have no authority to use the Prepetition Collateral or the Post-Petition Collateral of the Bank. Notwithstanding anything in this agreement or order approving same to the contrary, this agreement and its respective Termination Date may be extended upon the consent of the Debtor and Bank, or entry of an order of this Court after notice and hearing upon the same or different terms.

20. Based upon the findings set forth in this Interim Order and in accordance with Section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by subsequent order of this or any other court, no such modification, amendment, or vacation shall affect the validity and enforceability of any lien, security interest, or other priority authorized or created hereby.

| HEARTLAND BANK AND TRUST COMPANY | INTERNATIONAL SUPPLY CO. |
|---|---|
| /s/     Mark A. Bogdanowicz | /s/     Sumner A. Bourne |
| Mark A. Bogdanowicz | Sumner A. Bourne |
| Howard & Howard Attorneys PLLC | Rafool, Bourne & Shelby, P.C. |
| 211 Fulton Street, Suite 600 | 411 Hamilton Boulevard, Suite 1600 |
| Peoria, Illinois 61602 | Peoria, Illinois  61602 |
| Telephone: (309) 672-1483 | Telephone: (309) 673-5535 |
| Facsimile: (309) 672-1568 | Facsimile: (309) 673-5535 |
| Email: MBogdanowicz@howardandhoward.com | Email: sbourne@mtco.com |

# # #

4843-3627-9081, v.  2